**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SHANE YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:22 C 50222 |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In April 2022, Plaintiff Shane Young applied for a job with Walmart. As part of the onboarding process, Walmart employed the third-party firm First Advantage ("FADV") to conduct a background check. FADV queried a database produced by Defendant Experian Information Solutions ("Experian"), a credit bureau, and drew a response stating that Mr. Young was deceased. FADV reported the finding to Walmart, which rejected Mr. Young's employment application.

In response, the very-much-alive Young petitioned both FADV and Experian to fix the errors in his consumer file, but the errors were not immediately addressed. In response, he filed this lawsuit, asserting two claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. The court has granted summary judgment on one of those claims, and in this ruling, considers the remaining claim: that Experian failed to conduct a reasonable reinvestigation of the flawed report. Young has pointed to no admissible evidence supporting a jury finding in his favor on that claim, and Defendant's motion for summary judgment [218] is granted.

**BACKGROUND**

The facts underlying this lawsuit were explained in detail in the court's prior summary judgment opinion. *See Young v. Experian Info. Sols., Inc.* ("*Young I*"), 776 F. Supp.3d 721 (N.D.

Ill. 2025).  The court assumes the parties' familiarity with that order, as well as the procedural background of this case.

To briefly summarize: on April 19, 2022, Plaintiff Young consented to a routine background check as part of his application for a job with Walmart.  *Id.* at 731.  At Walmart's request, First Advantage ("FADV"), a third party, conducted the background check.  One step in the process was FADV's submission of a "Social Security Verification" request to Defendant Experian, one of the three major credit bureaus in the United States.  *Id.*  In response to the request, Experian ran a database query, checking information Young provided against a database maintained by the Social Security Administration ("SSA").  But the government's data erroneously marked Mr. Young as deceased.  Experian received the erroneous "deceased notation" and relayed it to Walmart. Walmart rejected Young's job application; the reason for the rejection is disputed by the parties, but it appears that concerns about fraud were at least partially to blame for Walmart's decision. *Id.* at 732.

The real Mr. Young, however, was alive and well.  He contacted FADV on May 3, 2022, to dispute the deceased notation.  FADV responded, ten days later, with a new report that again marked him as deceased.  At some point, Mr. Young got wind that Experian was the source of the false report, and he contacted the company by phone on May 31, 2022.  *Id.* at 733.  An Experian representative requested that Young obtain documentation from SSA verifying that he was not deceased and upload it to Experian's website.  On June 2, 2022, Young visited the SSA office in Freeport, Illinois, and met with an (unnamed) employee—according to Young, this employee informed Young that there was no issue with the government recordkeeping, and confirmed as such in a letter:  "You indicated that there is a third party that has you as decease [sic].  Our records don't show any date of death for your [sic]."  (SSA Letter [144-13] at 2.)[1]

---

[1]         As noted in *Young I*, 776 F. Supp. 3d at 735, there are reasons to question the letter's authenticity, but the court need not address the issue here.

Despite having apparently received the documentation he needed from SSA, Young never submitted it to Experian. Asked about this at his deposition, Young offered the puzzling explanation that he "didn't want to give them any more information to mess that up too because it's the only documents I had, so if I give them that and they lose that, then I'm back to where I started." (Young Dep. [136-7] at 221:16–20.) Young does not say why he could not have simply retained the original document and provided a photocopy to Experian or digitally submitted a copy to Experian's website. Experian claims that the real reason for Young's refusal to upload the documents was animosity towards Experian; Experian notes in particular Young's testimony that he "didn't want to give [Experian] anything to supposedly help them do their job."[2] *Young I*, 776 F. Supp. 3d at 735–36 (quoting Young Dep. [136-7] at 221:21–23).

Young did, however, dispute his background check with FADV on June 8, 2022. *Id.* at 736. On June 21, FADV requested a copy of Young's Social Security card and driver's license; Young submitted those documents that same day. FADV then logged into an online Experian portal and initiated a dispute on Young's behalf; whether FADV itself ever submitted a copy of Young's documents to Experian is not clear. *Id.* Matthew O'Connor, FADV's Rule 30(b)(6) corporate representative, testified in a deposition that he spoke to an FADV employee named Maria Roberson, who told him that she forwarded the documents to Experian in a separate email outside the portal. (O'Connor Dep. [225-1] at 16:22–17:2, 34:23–38:11.) No copy of this email is in the record; Experian has searched but has been unable to find such a message in its records. (Mem. [220] at 1–2.) O'Connor's deposition testimony is thus the only evidence identified by Young suggesting that this email was ever sent. (*See generally* Opp'n [225].)

---

[2] He later elaborated that he "didn't want to give them any more information than I felt they had. I feel that any information that I had, they would have more of that because of what they are as an entity over me. So I didn't want to give them anything else of mine to have them mess that up too when I had to sit there and try to do what I had to do to get this already for me." (Young Dep. [136-7] at 222:15–24.)

On June 22, 2022, one day after communicating with FADV, Young filed this lawsuit against FADV and Experian.[3]  The operative complaint alleges that Experian incurred liability under the Fair Credit Reporting Act by (1) failing to adopt "reasonable procedures" to ensure that his credit report was accurate, 15 U.S.C. § 1681e(b); and (2) failing to conduct a "reasonable reinvestigation" upon learning that the report was inaccurate, 15 U.S.C. § 1681i.  (Am. Compl. [120] at 10–12.)  After some procedural back and forth, Experian moved for summary judgment on both claims.  The court granted summary judgment on Young's § 1681e(b) "reasonable procedures" claim, but denied summary judgment on the § 1861i "reasonable reinvestigation" claim.  *See generally Young I*, 776 F. Supp. 3d at 721.  The parties engaged in further discovery, and Experian sought leave [215] to file a renewed motion for summary judgment on the remaining claim.  That motion is now fully briefed[4] and ready for decision.

## DISCUSSION

### I.     Legal Standard

Summary judgment is appropriate if "'there is no genuine dispute as to any material fact,' and the moving party 'is entitled to judgment as a matter of law.'" *Johnson v. Edwards*, 164 F.4th 1074, 1079 (7th Cir. 2026) (quoting FED. R. CIV. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A genuine issue of material fact exists only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In considering a motion for summary judgment, the court construes "the facts in the light most favorable" to the non-moving party and draws "all reasonable inferences in its favor." *Waukegan Potawatomi Casino, LLC v. City of Waukegan*,

---

[3]     Young and FADV have since settled, and all claims against FADV have been voluntarily dismissed from this case.  Experian remains as the sole defendant.

[4]     The parties complied in general with Local Rule 56.1(b)(3); Plaintiff filed a Local Rule 56.1(b)(2) response to Defendant's statement of facts, but opted not to file a Local Rule 56.1(b)(3) additional statement of material facts.

128 F.4th 871, 873 (7th Cir. 2025). It does not "weigh evidence or make credibility determinations." *Johnson*, 164 F.4th at 1079.

Once a motion for summary judgment has been properly supported, the opposing party must produce affirmative evidence showing there is more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). An opposing party must produce affirmative evidence raising a genuine issue for trial; they may not rest upon allegations in the pleadings. *Anderson*, 477 U.S. at 256–57 (1986). Speculation "cannot create a genuine issue of fact that defeats summary judgment" and "is insufficient to defeat a summary judgment motion." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024) (citing *Circle City Broad. I, LLC v. AT&T Servs., Inc.*, 99 F.4th 378, 384 (7th Cir. 2024)).

## II.     Analysis

Enacted to "ensure fair and accurate credit reporting," the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, requires that credit bureaus "exercise their grave responsibilities with fairness." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Relevant here, the Act requires credit bureaus like Experian to adopt "reasonable procedures" to ensure consumer files are accurate, *see id.* at 816 (citing 15 U.S.C. § 1681e(b)), and conduct a "reasonable reinvestigation" of a consumer's files whenever the bureau is alerted to inaccuracies in a consumer's file, *see* 15 U.S.C. § 1681i(a)(1).

In *Young I*, the court granted summary judgment in favor of Experian on Young's "reasonable procedures" claim. The court noted that the Seventh Circuit has held in several cases that "some sources of information," like court dockets and bank records, are "sufficiently trustworthy that [credit reporting agencies] are initially entitled to rely on them as a matter of law." *Young I*, 776 F. Supp. 3d at 739 (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994), *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004), and *Chaitoff*, 79 F.4th at 816–17). Because the evidence showed that Experian's erroneous deceased notation resulted

5

from reliance on data from the Social Security Administration—a reliable source—Experian's procedures were reasonable as a matter of law.  *Id.* at 740.

The court declined, however, to enter judgment on the § 1681i(a)(1) "reasonable reinvestigation" claim.  *Id.* at 742.  The court acknowledged that Experian's actions appeared to be reasonable, and that Young's puzzling failure to comply with Experian's request for additional documents was at least partially to blame for any shortcomings in the reinvestigation.  *See id.* ("Here, it was reasonable for Experian to ask Young to prove that he was who he said he was by uploading identifying documents . . . Young's position seems to be that Experian should have taken his word for it based on his May 31, 2022 phone call and deleted the deceased notation accordingly.")  But the record was unclear as to whether FADV itself had submitted Young's identifying documents to Experian when it filed a dispute on his behalf on June 22, 2022.  "If FADV in fact passed along copies of Young's license and Social Security card to Experian on June 22, 2022, a jury could find that Experian breached its duty to reasonably reinvestigate, given that it failed to correct its reporting on him thereafter."  *Id.* at 742–43.  The evidence in support of such a theory was thin, but the court concluded it was at least possible that a reasonable jury could find in his favor.

In its renewed motion for summary judgment, Experian argues that Young has no evidence that FADV transmitted his documents to Experian on June 22, 2022.  Young's response relies on a single theory:  Young acknowledges that Experian did not send the documents via Experian's *web portal* on June 22, but he claims that FADV employee Maria Roberson sent them to Experian in an *email*, outside of the portal.  The sole piece of evidence he offers in support is the deposition of Matthew O'Connor, FADV's Rule 30(b)(6) corporate representative, who testified that Roberson told him that she had emailed the documents to Experian.  A copy of the email is not in the record, nor has either party submitted an affidavit or deposition testimony from Ms. Roberson herself.

6

This testimony is not sufficient to create a dispute of fact. The court is free to consider depositions, affidavits, and declarations in evaluating a motion for summary judgment, but evidence only establishes a material dispute of fact if it can be "presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(C)(1)–(2); *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 513 (7th Cir. 2022) ("Under Rule 56(c)(2), a party may object . . . that evidence presented by the other party cannot be presented in admissible form."); *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 907 (7th Cir. 2025) ("Evidence supporting and opposing a motion for summary judgment must be admissible in the same manner as at trial, except that parties may rely on sworn declarations in lieu of live testimony."). Even assuming that Mr. O'Connor's deposition testimony could be used at trial under Rule 32, his discussion of Roberson's statement would not be admissible, for two independently sufficient reasons.

### A.      Rule Against Hearsay

First, Mr. O'Connor's testimony about Ms. Roberson's statement is hearsay. *See* FED. R. EVID. 802. Plaintiff acknowledges this (Opp'n [225] at 4), but argues that the court should nevertheless consider the evidence because O'Connor was a Rule 30(b)(6) corporate representative, and was thus entitled to testify at his deposition as to matters outside his personal knowledge. Indeed, when a Rule 30(b)(6) witness represents an opposing party, the rule permits them to testify as to the statements made by their coworkers under the party opponent rule. *See* FED. R. EVID. 801(d)(2); *see also* 8A WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 2143 (3d ed. 1998). But FADV is no longer a party to the case, so Ms. Roberson's statement is not that of a party opponent.

In considering Rule 30(b)(6) nevertheless provides a rationale for admission of her statement, the court notes that the hearsay bar serves multiple purposes: It protects the dignity of the adversarial system by enabling vigorous cross examination of the declarant who makes a claim, rather than someone else who repeats it. *See Crawford v. Washington*, 541 U.S. 36, 43 (2004). It ensures the reliability of evidence by prioritizing direct knowledge over secondhand

7

accounts. *United States v. Ferguson*, 140 F.4th 538, 543 n.5 (4th Cir. 2025). And it ensures that "fact witnesses have personal knowledge of the matters upon which they testify." *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011). Rule 30(b)(6), by allowing an employee to step into the shoes of an organization, expedites litigation by allowing a party to obtain testimony from a representative of an opposing party, rather than undergoing the significant time and expense of conducting several depositions that might otherwise be required to garner a full understanding of a company's procedures and practices. *Id.* at 502–03. Because these witnesses can (and do) testify at depositions on matters outside the ambit of their personal job responsibilities, and because that testimony might be based on statements of other employees, it might be reasonable to view it as a sort of exception to the hearsay bar at the summary judgment stage. *See Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 867–68 (6th Cir. 2017*)*.

In this case, however, Mr. O'Connor's role as a corporate representative does not cure the hearsay problem. As Young acknowledges, Rule 30(b)(6) witnesses generally only testify to "matters known or reasonably available to the organization." *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894–95 (7th Cir. 2004). The testimony here does not describe company policies, procedures, practices, or anything else that is typical fodder for a Rule 30(b)(6) deposition. Instead, it concerns the conduct of one employee (Ms. Roberson), on a particular day, with respect to unique circumstances of one particular customer. A Rule 30(b)(6) representative is authorized to relay an organization's collective knowledge or viewpoint, but he or she cannot testify as to specific facts observed by an individual, even if that individual happens to be an employee of the organization. *See Sara Lee*, 276 F.R.D. at 503 ("[T]he court doubts that a Rule 30(b)(6) witness should be allowed to testify about the details of a car accident in lieu of the corporation's truck driver who actually witnessed the event."); *see also Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-CV-8808, 2023 WL 5647204, at *10 (N.D. Ill. Aug. 31, 2023) (collecting cases that barred hearsay contained in Rule 30(b)(6) depositions from being considered by the jury at trial).

The policy rationale behind the hearsay rule also favors its invocation here. Plaintiff's entire case hinges on O'Connor's testimony about what Roberson recalled concerning a single email sent years prior. The trier of fact would be required to rely not on Roberson's own testimony (itself likely inadmissible, as explained below), but instead on O'Connor's recollection of what Roberson said. It is not clear why Plaintiff has not presented evidence from Roberson herself, and presentation of this attenuated evidence is precisely what Rule 803 is designed to prevent. To the extent the statement concerns Roberson's own diligence, it appears to be self-serving; witness credibility is not considered at the summary judgment stage, but courts decline to consider self-serving out-of-court statements like this because they are "so often unreliable." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013); *see also Queen v. Hepburn*, 11 U.S. (7 Cranch) 290, 295 (1813) (Marshall, C.J.) ("[H]earsay evidence is incompetent to establish any specific fact, which fact is, in its nature, susceptible of being proved by witnesses who speak from their own knowledge."). The court sees little reason to deviate from that norm here, and Young has cited to no authorities supporting his belief that the hearsay rule does not apply here. (Opp'n [225] at 4–5.)

### B.     Best Evidence Rule

The court notes a further hurdle to admission of the Roberson statement: Under Rule 1002 of the Federal Rules of Evidence an "original writing . . . is required in order to prove its content unless these rules or a federal statute provide otherwise." FED. R. EVID. 1002. The email that Roberson allegedly sent to Experian is a "writing," meaning that a copy must be introduced into evidence in order to prove its contents. Roberson's own testimony about that email's contents would not be admissible.

Plaintiff resists this conclusion; he asserts that the Advisory Committee Notes to Rule 1002 states that an "event may be proved by nondocumentary evidence," and that the transmission of identity documents to Experian is an "event" that is not subject to the best evidence rule. (Opp'n [225] at 4.) The court disagrees. True, the transmission of documents might be an "event" in a

9

technical sense—and Ms. Roberson's testimony that she sent an email may well be admissible. But what is relevant to this case are the *contents* of the mail, and specifically whether the email included documents that support Plaintiff's request for reinvestigation. Rule 1002 applies here, and would bar the proposed evidence even if the hearsay rule did not apply.

\* \* \* \* \*

In summary: Roberson's statement about the email she allegedly sent on June 22, 2022, containing Young's documents is barred by Rule 802 and Rule 1002 of the Federal Rules of Evidence. Because this is the only evidence he has offered in support of his reinvestigation claim, summary judgment must be granted.

One final point. Young argues that even if the court sustains Experian's objections to O'Connor's testimony, the court should deny summary judgment because Young could theoretically prove his case in other ways that do not rely on that testimony. But Young never explains those theories, and does not identify any other record evidence that would provide a basis for a jury finding in his favor. As the Seventh Circuit has explained, summary judgment is the "put up or shut up moment in litigation" where "the non-moving party is required to marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (citation and internal quotation marks omitted). Even if Young in fact has undescribed and undisclosed evidence in support of his case, it was his burden to present that evidence, and he did not do so. *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 713 (7th Cir. 2021); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414–15 (7th Cir. 2019) (reiterating that each litigant has an obligation to bring evidence "to the court's attention"). The court cannot deny summary judgment based on mere intimations of sufficient evidence. *Celotex*, 477 U.S. at 322–23; *see also Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 603–04 (7th Cir. 2014).

## CONCLUSION

The motion for summary judgment [218] is granted. The Clerk is directed to enter

10

judgment against Plaintiff and in favor of Defendant.

ENTER:

Dated:  May 14, 2026

REBECCA R. PALLMEYER
United States District Judge